UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION
JUDGE CHARLES ESKRIDGE

CIVIL ACTION No. 4:22-cv-02920

| | | |
|---|---|---|
| CHEMEKA ALEXANDER | § | U.S. DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| MCCARTHY & HOLTHUS LLP, | § | JURY TRIAL **DEMANDED** |
| GUILD MORTGAGE COMPANY, | | |
| and RYSE INVESTMENTS LLC | | |
| Defendant(s) | | ____4____ DISTRICT |
| COURT | | |

## PLAINTIFF CHEMEKA: ALEXANDER'S OBJECTION TO MAGISTRATE CHRISTINA A. BRYAN MEMORANDUM AND RECOMMENDATION

COMES NOW, Plaintiff Chemeka: Alexander herby," Alexander," to submit her objections to the Memorandum and Recommendation of the magistrate Judge Christina A Bryant in response to document 48.

### I. OBJECTION

"Alexander," comes to this court with clean hands and in good faith and alleges to have provided this court with enough substantial proof supported by sworn statement, affidavit with 50 + Exhibits (A-Z and 1-34) of prima facie evidence to support her claims of the violations committed against her by the Defendants. The Plaintiff alleges to have stated a claim upon which relief may be granted and therefore "Objects" to the Memorandum and Recommendation to grant MTD for the Defendants (in doc 48). Plaintiff Alexander and would respectfully state as follows:

1

## II. ARGUMENTS AND AUTHORITIES

1. The damages of 9,000,000 (doc 49 page 2) sought by "Alexander" were based on estoppel by acquiescence with fee schedule attached of which Guild acquiesced to (exhibit 21). "Failure to reveal the material facts of a license or any agreement is immediate grounds for estoppel" Lo Bue v Porazzo, 48 Cal. App 2d. 82, 119,p 2d 346,348

2. "Alexander" referenced the exhibits already in evidence so "Alexander's" objection enables the court can infer the fact-based claims as plausible in relation to the evidence submitted. The Plaintiff's intent was for a residential consumer credit transaction to be performed of which Guild Mortgage Company owes performance. "Alexander," has been harmed by the transaction as a matter of equity. "Alexander," has never consented to any sort of commercial transaction knowingly or with expressed or implied intent. Any such commercial transaction for business purposes of the property was not consensual. Guild Mortgage Company utilized unlawful change and aberration by having "Alexander" sign under Uniform Commercial Code and caused the nature of the transaction in its entirety to change without my knowledge or consent. This change renders the applicable laws of remedy of this case to be granted under Uniform Commercial Code, DTPA, subrogation, Suretyship and or TILA.

   This is why one "Alexander' s" causes of action is a claim in recoupment (under "cause of action" doc 11 pg. 2.) (Exhibit 22). Alexander has shown

documentation in exhibits (E, Q, R,) less than 1 month after signing the deceptive documents (security offering), after closing the liability belonged to Fannie Mae of which it was transferred from Penny Mac LLC whom was servicing for the owner Penny Mac Corp whom purchased the 'alleged loan from Guild Mortgage Company who took an advance from "Alexander". "Alexander also submitted proof as to the Fannie Mae prospectus supplement REMIC trust. (Doc 11, 5.5, pg. 4) Due to this an account debtor relationship was never established, Guild was never negotiated my note in an account debtor status nor did Guild hold the asset and abide by GAAP. The Uniform Commercial Code contains rules applying to many types of commercial contracts related to the sale of goods. Leasing of goods, use of negotiable instruments, banking transactions, letters of credit, documents of title for goods, investment securities and secured transactions. However, there are many business-related transactions that the UCC does not cover. Key among these are **real estate contracts, service contracts and employment contracts**. Land is not a moveable good and my contract as shown in (Exhibit 37) was for the land and its improvements. It was not my purpose or intent to split the two; However, it is clear this was the purpose and the intent of Guild Mortgage Company having me to sign under Uniform Commercial Code to accommodate them violating CFR 444.4(a)(1). The purported promissory note was not a promissory note but a security with definite "words of negotiability" on its face, by "Pay to the Order" on the last page and was stamped non-Recourse.

The Supreme Court in *Reves v. Ernst & Young (1)* rejected the D.C. and Eighth Circuit courts' approach in applying the Howey Test in determining if a note should qualify as a security and instead adopted the family resemblance test from the 2nd Circuit.

The test begins with a presumption that every note falling outside § 3(a)(3) of the Act is a security, unless rebutted by any of the following factors:

1. The purpose of the transaction is examined. Unless it is resold to a third-party at a discount to its original face value, a note is not a security, if it was exchanged to "facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose."

2. The plan of distribution of the transaction is examined to determine whether the note is traded for speculation or investment. Selling an instrument to the broad public constitutes a plan for distribution that likens the instrument to a security versus an instrument that governs the rights and obligations of two parties in a single transaction. For example, factoring without recourse is securitization. Although not arranged with "the broad public," the third-party resale or "factoring" of a discreet commercial invoice makes the note a security, because the resale is for speculation or investment.

3. The reasonable expectations of the investing public are examined to determine whether the public would view the instrument as a tradeable financial instrument. If so, the instrument is likely a security.

4. Whether some other law "reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." For example, mortgage lenders

4

are regulated under the Consumer Financial Protection Bureau (CFPB), the Federal Deposit Insurance Agency (FDIC), the U.S. Department of Housing and Urban Development (HUD), or other agencies. Such agencies would likely have promulgated regulations that would allow for the consumer to be sufficiently protected by the respective regulatory schemes without need for application of the securities laws.

For this reason, the Defendants Motion to Dismiss should not be DENIED. Magistrate Christina A. Bryant hereby "Bryant" excluded these claims and cause of action from her fact findings.

3. TILA was violated as to the omissions and misrepresentations relied on by "Alexander," pertaining to the lending source as part of the transaction. It is also evident upon the face of the closing disclosures (show that consumer credit was extended due to the APR and Finance Charge, of which cash was also taken. "Alexander" rescinded the transaction. (Exhibit 23,27 & , 36) when a borrower signs at closing funding source is also initiated with the signature of the borrower under UCC 8– 102, this establishes the entitlement right to rescind where fraud is involved. Fraud occurred by the omissions and misrepresentations changing the transaction to a commercial UCC contract and failing to fully disclose the lending source. The Causation of these misrepresentations induced "Alexander" to sign into a commercial transaction of which her financial asset was not returned nor was the implied contract for performance rendered. "Alexander" was given nothing and her equity was stolen to aid Guilds unjust enrichment. "Alexander" did not discover the nature of the transaction until 2021.

**Jesinoski** v. Countrywide Home Loans, Inc., 574 U.S. 259 (2015), was a United States Supreme Court case in which the Court held that the Truth in Lending Act does not require borrowers to file a lawsuit to rescind loans and that sending written notice is sufficient to effectuate rescission.

". . . the bank is allowed to lend money upon personal security; but it must be money that it loans, not its credit." Seligman v. Charlottesville Nat. Bank, 3 Hughes 647, Fed Case No.12, 642, 1039.

"In the federal courts, it is well established that a national bank has not power to lend its credit to another by becoming surety, indorser, or guarantor for him." Farmers and Miners Bank v. Bluefield Nat 'l Bank, 11 F 2d 83, 271 U.S. 669.

"If any part of the consideration for a promise be illegal, or if there are several considerations for an unseverable promise one of which is illegal, the promise, whether written or oral, is wholly void, as it is impossible to say what part or which one of the considerations induced the promise." Menominee River Co. v. Augustus Spies L & C Co., 147 Wis 559, 572; 132 NW 1122

"When an instrument [note] lacks an unconditional promise to pay a sum certain at a fixed and determined time, it is only an acknowledgement of the debt and statutory presumptions like the presence of a valuable consideration, are not applicable." Bader vs. Williams, 61 A 2d 637

Requirements of Truth in Lending Act are highly technical, but full compliance is required; even minor violations of Act cannot be ignored, Truth in Lending Act, Section 102 et seq. as amended, 15 U.S.C. Section 1601 et seq.; Truth in Lending Act Regulations, Regulation Z Section 226.1 et seq., 15 U.S.C. foil.

Section 1700. Griggs v. Providence Consumer Discount Co. 503 F.Supp. 246, appeal dismissed 672 F2d 903, appeal after remand 680 F.2d 927, certiorari granted, vacated 103 S.Ct, 400, 459 U.S. 56, 74 L.Ed.2d 225, on remand 699 F,2d 642.

Purpose of Truth in Lending Act is for customers to be able to make informed decisions. Truth in Lending Act Section 102, 15 U.S.C. Section 1601. Griggs v. Provident Consumer Discount Co. 680 F.2d 927, certiorari granted, vacated 103 S.Ct. 400, 459 U.S. 56, 74 L.Ed,2d 225, on remand 699 F,2d 642,

Truth in Lending Act is strictly a liability statute liberally construed in favor of consumers. Truth in Lending Act Section 102 et seq., 15 U.S.C. Section 1601 et seq. Brophy v. Chase Manhattan Mortgage Co, 947 F.Supp. 879.

> To qualify for protection of Truth in Lending Act [15 U.S.C. Section 1601 et seq.], plaintiff must show that disputed transaction was a consumer credit transaction not a business transaction, Truth b Lending Act, Section 102 et seq., 15 U.S.C. Section 1601 et seq.

"The contract is void if it is only in part connected with the illegal transaction and the promise single or entire." Guardian Agency v. Guardian Mutual. Savings Bank, 227 Wis 550, 279 NW 83.

If a creditor fails to make required disclosures under the Truth in Lending Act (TILA), borrowers are allowed three years from the loan's consummation date to rescind certain loans. 15 U.S.C. § 1635(f). Borrowers may affect that rescission simply by notifying the creditor of their intent to rescind within the three-year period. *Jesinoski v. Countrywide Home Loans,* —— U.S. ——, 135 S.Ct. 790, 792, 190 L.Ed.2d 650 (2015). TILA does

7

not include a statute of limitations outlining when an action to enforce such a rescission must be brought. Without a statute of limitations in TILA, courts must first borrow the most analogous state law statute of limitations and apply that limitation period to TILA rescission enforcement claims. *Cty. of Oneida v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 240, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985).

In United States v. Throckmorton, 98 U.S. 61 (1878), this Court held that "There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments." Federal law requires the automatic disqualification of a federal judge under certain circumstances. In 1994, the U.S. Supreme Court held that "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994). In Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960), the Supreme Court ruled and reaffirmed the principle that "justice must satisfy the appearance of justice."

4. Plaintiff's Cause of Action was Unjust enrichment. (Doc 11, #5.2, pg. 3). Typically considered Breach of contract, Breach of Fiduciary, Breach of Intermediary. To respond to "Bryant's" fact finding. (doc 48 page 6). **"Alexander states most of the remaining claim made by "Alexander are in fact "Novel."**

Guild Mortgage Company acted as a Securities Intermediary when they absconded, after accepting her collateralized asset (security) needed with "Alexander's" signature on the instrument, of which enabled them to pledge the asset on a warehouse line of credit as shown on (Exhibit Z). Guild did not hold the negotiable

8

instrument (not 1 day) but, instead immediately used it for their unjust enrichment. Guild Mortgage Company's broker received a kickback (and Guild Mortgage Company accepted the security asset and fled to the secondary market. Thus, we consider Starks and Siegel's claim in light of the facts of this individual case, looking only to the constitutionality of the Anti-Kickback statute as the government has applied it to Starks and Siegel. See United States v. Hofstatter, 8 F.3d 316, 321 (11th Cir. 1993); United States v. Awan, 966 F.2d 1415, 1424 (11th Cir. 1992).

The trust recorded was created for illegal purposes and was never registered or accepted by Chris Pierson. The purpose of the trust was to steal the title. Guild Mortgage Company's intent was clear. The documents were required to go into the Fannie Mae Trust on or about September 26 2019 and through the multiple transactions conducted in sequence it did and by the Notifications mailed to "Alexander" directly from Fannie Mae, it did. A "Nominee", "Realty Trust, is "not really a "trust" but a means to conceals the Beneficial Interest of Shareholders (title holders). This type of trust is controlled by the beneficiary "grantee" which directs the Trustee. This is atypical from your normal trust of which the trustee acts in good faith and with prudence and care of duty (In other words, causing the trustee to commit a tort claim). Guild Mortgage Company upon the face substitute trustee deed document, appeared to be Mortgagee, Beneficiary and the Servicer. This Novel claim proves the exact reason senate adopted the Chapter 21A (b) mandate. Guild made extensions of credit to "Alexander" and before conveying the deed required her to deed the conveyance right back to Guild Mortgage Company as

9

grantee(beneficiary) in the Nominee trust, so they could conceal this fact and turn around to pledge the property for a warehouse line of credit. When the foreclosure occurred Fannie Mae held the debt since Fannie Mae owned it since October 2019 just as the Notification of Assignment sent to "Alexander" in 2019 states (Exhibit R). Mers was the software (Participants Depository Trust Accounts) for its members which exist to monitor the monetary obligation and security interest and chattel paper to the receivables "payment" to pay certificate holders on the secondary market. None the less, this once again was a commercial transaction which would have been negotiated completely different had I known the true and full nature of the transaction been disclosed. None-the-less, I could have opted out. The effects the fraud in the concealment, inducement and execution of this transaction stands to cause "Alexander" great injury in terms of equity. (Exhibit 16,17,18, & 19) were sent to Guild and in Guilds response they claimed in (Exhibit U) that there were no allonges to the note, but this is untrue. Guild claims in (Exhibit W) that it held the account on its Investor Portfolio Loan, however this is also untrue. Guild sent "Alexander" an altered fictitious note but declined when asked to meet in order to have it examined. (Exhibit 1) "Alexander" exhausted all of her private administrative procedures, Guild has been estopped and owes "Alexander" by, Recission UCC 4-19(f), Recoupment UCC 3-305 (3)(c), TILA recission, Chapter 21A, DTPA, or Subrogation.

More recently, the Texas Supreme Court found a duty of good faith and fair dealing to exist between an insured and his insurer. Arnold v. National County Mutual Ins. Co., 725 S.W.2d 165 (Tex. 1987). The Arnold court found that the relationship

between the parties arose "out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insured's misfortunes in bargaining for settlement or resolution of clams." Id. at 176. The Court went on to find that the inadequacy of the remedy available to an aggrieved insured necessitated the imposition of such a duty. "[W]without such a cause of action, insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed." Id. at 167. Additionally, the Court noted that the insurance company had control over the evaluation, processing and denial of claims. Id.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." In K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 759 (6th Cir. 1985) the lender was found to have breached an implied covenant of good faith by failing to give notice to the borrower that no further discretionary advances under a line of credit would be made. See also First Texas Sav. Ass'n v. Dicker Center, Inc., 631 S.W.2d 179, 182-83 (Tex. App. -- Tyler 1982, no writ) (good faith refusal to honor loan commitment).

Breach of Duty to Deal in Good Faith. "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Tex. Bus. & Com. Code Ann. § 1.203 (Tex. U.C.C.) (Vernon 1987). La Sara Grain v. First Nat'l Bank, 673 S.W.2d 558, 563 (Tex. 1984). Promissory notes are governed by the Texas Uniform Commercial Code. Southview Corp. v. Kelberg First Nat'l Bank, 512 S.W.2d 817 (Tex. Civ. App. -- Corpus Christi 1974, no writ); Carter v. South Texas Lumber

Co., 422 S.W.2d 951 (Tex. Civ. App. -- Eastland 1967, no writ); see also Williams v. Stansbury, 649 S.W.2d 293

That as applied to so-called payments on the contract, the giving of a note does constitute payment " Echart v Commissioners C.C.C 42 Fd2d 158.

That as applied to making so-called payments on the contract, the use of a Federal Reserve note is not only a promise to pay See Fidelity Savings v grimes 131 P2d 894

That as applied to making so-called payments on the contract legal tender, notes are good in lawful money of the United States. See Rains v State, 226 S. W.189

Notes do operate as payment in the absence of an agreement and they shall constitute payment See Blackshear Mfg Co. v Harrell, 12 S.E. 2d 766

5. Lack of standing. Due to the above mentioned "alleged "facts Guild Mortgage Company did not have standing to foreclose, as there was no evidence of an underlying indebtedness and furthermore Guild did not hold the debt if there was. A PMSI "Purchase Money Security Interest is not perfected in non- conforming goods unless a financing statement is filed and also value mist be given, the PMSI can't be based on a gift. Furthermore Guild Mortgage Company Commingled "Alexander's" cash deposit funds with the Special Deposit Funds in the transaction. There was never and assignment recorded of record prior to foreclosing. If Guild mortgage company were to argue that they can proceed under the authority of the security deed, this is untrue. However, assignee of the note and security deed cannot foreclose upon the security until there has been an actual assignment " (Cummings v Anderson, 170 B. R 959(963)( Bankr N.D. Ga 1994. (Due to Guild Mortgage

Company not fully disclosing the true nature of the transaction and making misleading statements, causing "Alexander" to sign deceptive documents concerning based on material omissions and misrepresentations of which caused equitable injury.

## III. CONCLUSION

"Alexander" has provided sufficient evidence based on factual statements to prove that this case is not meritless upon her objections of the memorandum and suggestions entered upon record. The Plaintiff has stated her claim upon which relief may be granted against "Guild Mortgage Company." Alexander has proven to this court causation and how she would be harmed in terms of equity by the negligent of Guild Mortgage Company by the contract. Therefore "Alexander" respectfully request the court Denies "Guild's" Motion to Dismiss entirely. "Alexander" respectfully request to proceed in pre-trial proceedings in conference to pursue all of the relief to which "Alexander" is justly entitled.

Respectfully submitted,

*[signature]*

Chemeka-N:Alexander

# Certificate of Service

I certify that a true and correct copy of this document was served in accordance with Federal Rules of Civil Procedure on the following 18th day of May 2023.

Delivered via email:

Ramona V. Ladwig
McCarthy & Holthus
1255 W. 15th St.
Plano, TX 75075
214-291-3781
email:rladwig@mccarthyholthus.com

Valerie Anne Henderson
Baker Donelson, Bearman, Caldwell & Berkowitz PC
1301 McKinney Street
Suite 3700
Houston Texas 77010
fax: 713-650-9701
email:vhenderson@bakerdonelson.com

Kristen Diane Vesel
Baker Donald and 1301 McKinney Street
Suite 3700
Houston TX 77010
713-286-7164
email:kvesel@bakerdonelson.com

Wyant J Holtsclaw
2060 N. Loop West Suite 223
Houston, TX 77018
713-955-2273
wholtsclaw@silblawfirm.com

*[signature]*
Alexander:Chemeka
P o box 11581
Houston, Texas [77293]
8328969472
Chemeka.alexander.legal@gmail.com